IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DELMAS COGAR,

        Plaintiff,

v.                                           Civil Action No. 2:04-CV-48

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.


**REPORT AND RECOMMENDATION**
**SOCIAL SECURITY**

**I. Introduction**

A.    <u>Background</u>

     Plaintiff, Delmas Cogar, (Claimant), filed his Complaint on July 30, 2004 seeking Judicial

review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social

Security, (Commissioner).[1]  Commissioner filed her Answer on October 5, 2004.[2]  Claimant filed

his Motion for Summary Judgment and Brief in Support Thereof on May 17, 2005.[3]  Commissioner

filed her Motion for Summary Judgment and Brief in Support Thereof on May 17, 2005.[4]

B.    <u>The Pleadings</u>

            1.    <u>Claimant's Motion for Summary Judgment and Brief in Support Thereof</u>.

            2.    <u>Commissioner's Motion for Summary Judgment and Brief in Support</u>
                 <u>Thereof</u>.

---

[1] Docket No. 1.

[2] Docket No. 5.

[3] Docket Nos. 14 and 15.

[4] Docket Nos. 16 and 17.

C.     <u>Recommendation</u>

1.     I recommend that Claimant's Motion for Summary Judgment be DENIED because the ALJ was substantially justified in his decision. Specifically, the ALJ gave proper weight to the opinion of Claimant's treating physicians, Dr. Mathias and Dr. Ahmed. Also, the ALJ properly determined that the Claimant did not meet listing 11.06. In addition, the ALJ was not required to re-contact any treating physician. Also, the ALJ properly analyzed Claimant's credibility. Lastly, the ALJ properly determined that Claimant could perform his past relevant work.

2.     I recommend that Commissioner's Motion for Summary Judgement be GRANTED for the same reasons set forth above.

## II. Facts

A.     <u>Procedural History</u>

On July 3, 2002 Claimant filed for Disability Insurance Benefits (DIB) alleging disability since June 7, 2002. The application was denied initially and on reconsideration. A hearing was held on August 14, 2003 before an ALJ. The ALJ's decision dated September 16, 2003 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on June 2, 2004. This action was filed and proceeded as set forth above.

B.     <u>Personal History</u>

Claimant was 59 years old on the date of the August 14, 2003 hearing before the ALJ. Claimant has a college education and past relevant work experience as a family support specialist with the state welfare agency.

C.     <u>Medical History</u>

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability June 7, 2002.-September 16, 2003:

**The Cleveland Clinic**
**Tr. 151**
- Impression: PD (I); stable; tolerating medications.

**The Cleveland Clinic**
**11/7/97 Tr. 152**
- Impression: Parkinson Disease Stage I; Beginning to wear off.

**The Cleveland Clinic**
**Richard S. Burns, M.D.  7/16/96 Tr. 168**
- Underlying neurological disorders: Parkinson's Disease Stage I, Asymmetrical (L sided), Bradykinesia-Predominant, untreated and Essential Tremor, with postural and action tremor, upper extremities (L>R), positive family history of tremor.

**Psychiatric Review Technique**
**Frank Roman 8/23/02 Tr. 172-185**
- No medically determinable mental impairment

**Physical Residual Functional Capacity Assessment**
**Thomas Laudermann D.O. 8/30/02**
- Exertional limitations: Occasionally 50 lbs., frequently 25 lbs., stand and /or walk 6 of 8 hours, sit 6 or 8 hours, unlimited push or pull.
- Postural limitations: All frequently.
- Manipulative limitations: None established.
- Visual limitations: None established.
- Communicative limitations: None established.
- Environmental limitations: Avoid all exposure to hazards (machinery, heights, etc...), all others unlimited.

**Ghassan H. Kanj, M.D, FCCP 4/03/02 Tr. 202**
- Impression: Axis A: EDS, snoring. Witnessed Apnea.
- Axis C: Overweight
- Parkinson's Disease.

**Wm. H. Downer, D.C. 7/29/99 Tr. 206**
- Diagnosis: Acute Lt. Iliac area strain. Parkinson's Disease.

**Wm. H. Downer, D.C. 10/22/96 Tr. 207**
- Diagnosis: Acute mid-dorsal spine area strain and acute rt. iliac area strain. Tremor of the lt. hand.

**Wm. H. Downer, D.C. 9/26/91 Tr. 208**
- Acute lower cervical spine area strain with mid-dorsal spine area strain, acute sacro-rt. iliac area strain/sprain.

**Wm. H. Downer, D.C. 12/10/91 Tr. 208**
- Acute sacrum area strain with sciatic radiculitis of the lower lt. extremity area.
-

**Wm. H. Downer, D.C. 5/22/95 Tr. 208**
- Acute cervical spine area strain with mid-dorsal spine area strain.

**Wm. H. Downer, D.C. 10/24/95 Tr. 208**
- Diagnosis: Acute lower dorsal spine area strain with intercostal neuritis affecting the 9th/10th right costal area.

**St. Joseph's Hospital**
**Norina Derose, M.D. 12/30/02 Tr. 223**
- Impression: Moderate levoscoliosis. Mild to moderate osteoarthritis in the lower lumbar spine.

**Physical Residual Functional Capacity Assessment**
**11/16/03 Tr. 227-233**
- Exertional limitations: Occasionally 50 lbs., frequently 25 lbs., stand and/or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
- Postural limitations: None established.
- Manipulative limitations: None established.
- Visual limitations: None established.
- Communicative limitations: None established.
- Environmental limitations: None established.

**Psychiatric Review Technique**
**Samuel Goots, Ph.D. 1/16/03 Tr. 235-248**
- No medically determinable impairment.

**HealthWorks**
**5/31/02 Tr. 251**
- Patient continues to exhibit forward head, overall slouched posture, LE mm tightness. Patient would benefit from continued performance of HEP conditioning program to maintain current functional level especially to the degree of Parkinson's Disease.

**HealthWorks**
**5/29/02 Tr. 252**
- Assessment: Patient exhibits good tolerance to exs. symptoms of pain, stiffness possibly related to Parkinson's.

**HealthWorks**
**5/24/02 Tr. 253**
•     Assessment: Patient responding well to Rx. (illegible) symptoms reported.

**HealthWorks**
**5/20/02 Tr. 255**
•     Diagnosis: Low back pain.

**2/20/03 Tr. 263**
•     Impression: Possible Parkinson's disease. Increase difficulty walking, balance and wearing off. Mild involvement right side as well. Symptoms may be subtherapeutic. Increase back pain when medications are off.

**The Cleveland Clinic**
**Anwar Ahmed, M.D. 3/4/02 Tr. 266**
•     Impression: Patient has a diagnosis of idiopathic Parkinson's disease. His symptoms are primarily involving the left upper and lower extremities and are manifesting as tremor and decreased dexterity in these limbs. There are mild dyskinetic movements involving his left lower extremity and a decrease in dexterity.

**Levin & Associates**
**Martin Levin, M.A. 8/5/03 Tr. 281**
•     Diagnosis: Axis I: 309.28 - Adjustment disorder with mixed emotional features, secondary to Parkinson's Disease.
•     Axis II: No conditions present.
•     Axis III: Parkinson's Disease, sleep apnea, scoliosis, arthritis of the spine, all as reported by the claimant.

**Mental Residual Functional Capacity Assessment of Work-Related Abilities**
**Martin Levin, M.A. 8/11/03 Tr. 283-287**
•     No limitations in any category.

**Psychiatric Review Technique**
**Martin Levin, M.A. 8/11/03**
•     No medically determinable impairment.

**Residual Functional Capacity Assessment**
**2003 Tr. 299-303**
•     Patient must alternate positions frequently.
•     Patient needs sit/stand option frequently.
•     Sit for one hour, stand 10-15 min., walk 15-30 min.
•     Walk/stand 2-4 of 8 hours.
•     Patient may have to recline or lie down during the day.

- Patient must rest frequently.
- Can never climb or balance.
- Avoid even moderate exposure to cold or hot temperatures, avoid exposure to machinery, jarring or vibrations and environmental hazards.
- Patient needs an assisting device.
- Patient cannot use feet for repetitive movements such as in pushing/pulling feet controls.
- Cannot use hands for repetitive action in a job where such use is required.
- Patient is not capable of performing full-time job on a sustained basis.

**Questionnaire**
**8/19/03 Tr. 309-311**
- Present diagnosis: Parkinson's disease.

**Cleveland Clinic Foundation**
**Anwar Ahmed, M.D. 2/17/04 Tr. 316**
- Impression: Patient has symptoms of Parkinson's Disease. He has symptoms going on for 8 years and now some worsening. He has got some wearing off difficulties as well. At this stage of the disease, he has bilateral symptoms and on and off-medication slates. Dexterity is also affected due to Parkinson's disease and posing difficulty with typing and handwriting as well. Some of his symptoms are disabling and effecting his work situation. His work situation should be evaluated during his on and off-medication states.

D.   Testimonial Evidence

1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 326-32, 334-35):

Q     All right.  Well, let's talk about what your specific symptoms were.  When you were diagnosed with Parkinson's, how did it begin and what started it?

A     I was having a twitching in my, as I recall, in my leg primarily for just unexplained  reasons and general loss of control, like in my left arm, I was misdiagnosed for awhile, so a couple doctors sort of misdiagnosed it, but I went to the Cleveland Clinic.  And my first trip there I was - - it was in '96, I guess, I was diagnosed with the Parkinson's at that time.

Q     Okay.  And so, say, from '96 on, what physical problems have you had in

6

connection with the Parkinson's?

A       Sort of the same ones I'm having now except they were less - - much less severe at that time.  I continued to work as long as I could with them until they just - - they got bad that I couldn't continue.

ATTY        All right.  Now, Judge, I don't - - you can't see him from where you are, but I mean his leg just is really shaking quite badly.  It seems like it'll shake awhile and then ease up a little bit and then shake awhile.

BY ATTORNEY:

Q       Is this typical for you?

A       It is and frequent - - sometimes it'll - - believe it or not, my foot will bounce completely off the floor.  I mean the tremor will get so bad I try to think about it and control it, but I can't stop it as a rule.

Q       Okay.  Now, as far as your ability to stand and walk, has it affected - - has the Parkinson's with your left leg and any other was affected your ability to stand and walk?

A       I cannot stand for a very long period at all and I can't walk any great distance with - - once again, if my medication is fully kicked in, I might be able to walk pretty - - at a fairly normal gait, but then there's a long period time as the medication's wearing off that I just basically kind of shuffle around.

Q       Okay.  What is it - - let's talk about not when your medicine is fully kicked in, but when it's more - - when it's wearing off or work off, what do you have trouble with?  What's the problem with standing?

A       I - - my legs - - I just get - - I just seem very, very weak and the - - in the medical

field, they use the term your feet sticking to the floor and I have that sort of sensation a lot.  You - - if I'm standing and I want to move, you want to move, but your mind just can't connect to your muscles.  You want to move, but your legs just they just won't move or your hands just won't move right there.

Q      Okay.  So you in your mind go to take a step and your foot is still still and - -

A      Right, it's just - -

Q      - - it's still on the floor.

A      And I may want to turn around or maybe stand in the shower, for example, or anywhere and I just - - you just have to kind of think about it and maybe even sort of start backwards instead of forward to get the legs to move.

Q      Has it affected your balance in any way?

A      Yes, I - - my balance is quite affected - - quite negatively affected.  I - - particularly, if I'm walking a lot of the time maybe or if I look to the side, I'll either go to the direction I look or something or I just - - I can't keep walking down the straight line particularly.

Q      Okay.  What about picking up your feet and actually moving your legs once you get going or is every step?

A      Well, it - - no, it - - every step is difficult.  I - - once you kind of get a gait going you can move, you can get along, but it's almost taxing on your mind.  You know that you - - you're not doing well and - - it's not a very good explanation to your - - answer to your question, but it - - it's not just getting started.  It's difficult to keep on going.

                              *            *            *

Q      Okay.  Now, you mentioned earlier that you had a feeling of weakness.  Is the

8

weakness in specific muscles or is it an overall feeling of weakness?

A       It's more in the legs.  The doctor - - he is - - he keeps telling me - - I will say that to him and he'll say its one muscle pulling against the other and, therefore, yeah, they're going to, you know, they're going to get - - you're going to get weak.  I never envisioned it myself as being one muscle pulling against the other, but for some reason, I do just get so darn weak.  I just can't stand.  I just need to sit - - you know, sit down or lay down or - - and typically, if I can maybe sit down, put my feet up and try to get - - really get in restful position or may be lay down for a little while, then it'll - - it will improve.

Q       Do - - I'm sorry.

A       And I do that.  I do that at home a lot.  When I - - when I'm having difficulty, I'll frequently go in and just lay down across the bed for awhile and I can get a - - maybe - -sort of settle down for a little bit.  And I use a massage pad in a chair.  I use one of those quite frequently for - - because my back hurts a lot with this as well.  And that - - the massage tends to help some, you know?

*            *            *

Q       Okay.  Now did over time any of this - - did anybody connect the problems you were having with your back to the Parkinson's rather than some independent condition?

A       Recently, yes, I - - Dr. Ahmed in Cleveland.  I've asked him.  I was suspecting myself that there was a connection and he has told me, yes, there is and I do believe Dr. Mathias has said the same thing, but I myself know that - - I'm just discovering that when it - - when my medication is worn off, the - - my back is susceptible to really tightening up.  I just - - if I go to do very much of anything, if I'm trying to wash dishes, for example, and I try to help my wife

some by doing that.  If I just to have to stand there a little bit, my back just - - it just really tightens up.  I call it tightening up sort of like a spasm or tightening up.  And I'll just - - I just have to - - I have to go sit down or lay down or - -

\* \* \*

Q     Okay.  Now, tell me a little bit about your hands and your arms and your shoulders.

A     Well, I - - my - - the tremors start up as being primarily on my left side.  It - - it's moving to my right - - well, it has been for quite some time, but it's always been worse on my left.  And I just - - you know, I have the tremors, shaking, I - - examples - - I have trouble maybe carrying a drink or something.  If I'm in a restaurant or - - a lot of times having, you know, having something to drink, I have had to have people go get a drink from a - - where I had to carry a drink across a room perhaps.  I'm shaking, spill it and I may have to have somebody carry it for me, that sort of thing.

Q     Okay.  What about any fatigue or lack of control of your hands and your arms?

A     I have pretty decent strength and when I - - that part doesn't seem, really, to be affected, but just the fine tuning or doing - - if I had, you know, if I had to do something very delicate or, you know, buttoning your clothes can - - I couldn't do most of the time, but it sometimes takes me a good while and, you know, to get a shirt buttoned or something for example.

\* \* \*

Q     Okay.  All right.  And tell me about your pain.  Now, could you rate it for me and tell me how it varies?

A    I - - I've had chronic problems with my back.  I think it goes back to - - well, you just don't need to hear the specific.  I know a night in 1989, the day of our mother's funeral, I hurt my back and it's kind of - - I've had flare ups ever since, but right now, I'm trying to - - I use a back support occasionally if I'm doing repetitive things around the house or just to put on a little extra support.  I have a tens unit that was prescribed for me.  I use it occasionally if my back pain gets pretty severe.  I take some ibuprofen and I also have - - what is it - - Hydrocodone, I believe, is a little more powerful pain medication, which I try not to take.  I try not to take anymore medications that I have - - I don't like to take them because there's usually negative side effects to about every medication, but - - so - -

Q    What's the negative of the Hydrocodone?

A    Well, I think it's - - it may be pretty habit forming.  I don't - - I'm not sure, but - -

Q    Okay.

A    But my back pain can be - - it gets quite severe at times and then I go through spells of when it's not - - I wouldn't rate it really severe, but it's - - during the - - each day, I go through several periods of time when my back is giving me a fair amount of - -

*            *            *

Q    Any problems with memory?

A    It - - I'm pretty sure I'm having a fair amount of short-term memory problems.  I've not - - I wouldn't rate those severe maybe, but - - myself, but others might, but - -

### 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 346):

Q        [INAUDIBLE].  Could you describe Mr. Cogar's past work in the State of West Virginia?

A        His work as a case worker is sedentary and skilled, Your Honor.

Q        Now, if the Claimant, because of - - can you identify the skills that may be - - are there any transferable skills to other sedentary work?

A        Those would be pretty job specific.  There might be other social agencies who would readily adapt to that.  Department of Human Services, [INAUDIBLE] work for rehabilitation officer or something like that, but it'd be - -

Q        All jobs in that genre, do they require typing, keyboarding, to your knowledge?

A        The vast majority would have, yes.

Q        Now, Mr. Bell, if the Claimant's affects of Parkinson's caused fatigue or would have to lie down during the day more than, say, the normal breaks, which would be one lunch, one - - more than three, would that rule out any jobs and past work?

A        I believe so, Your Honor.

*                *                *

E.        Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records.  The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

•        Claimant does dishes. (Tr. 337).

•        Vacuums house on occasion. (Tr. 337).

•        Mows less than half acre of grass on riding mower. Trims with self-propelled push

mower. (Tr. 337).

- Deer hunts about two or three times during the season. (Tr. 338).

- Went fishing three or four times during spring and summer. (Tr. 339).

- Took a trip to Canada to fish. (Tr. 339).

- Can ride in a car for 12 hours. (Tr. 339).

- Took a trip to Myrtle Beach. (Tr. 340).

- Can go to theater shows. (Tr. 340).

- Plays Omni Cord instrument, mostly last five or ten years. (Tr. 340-341).

- Drives about 100 miles per week. (Tr. 342).

- Attends a few WVU basketball games. (Tr. 342).

- Reads newspaper. (Tr. 342).

## II.  The Motions for Summary Judgment

A.    <u>Contentions of the Parties</u>

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically,  Claimant argues that the ALJ erred in not granting the opinions of Dr. Ahmed and Dr. Mathias controlling weight. Also, Claimant asserts that the ALJ erred in finding that Claimant did not meet Listing § 11.06.  In addition, Claimant contends that the ALJ erred when he failed to re-contact Claimant's physicians to resolve inconsistencies or ambiguities in the record. Also, Claimant contends that the ALJ failed to follow requisites of SSR 96-7p when evaluating Claimant's credibility and symptoms. In addition, Claimant argues that the ALJ failed to give proper weight and credit to Claimant's past work history.  Also, Claimant contends that the ALJ erred in finding that Claimant could perform his past relevant work.  Lastly, Claimant asserts that the ALJ erred in

disregarding the favorable testimony of the VE.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ gave proper weight and evaluation to the opinions of Claimant's treating physicians. Also, Commissioner asserts that the ALJ properly found that Claimant did not meet or equal Listing § 11.06. In addition, Commissioner maintains that the ALJ was not required to re-contact any treating physicians. Also, Commissioner contends that the ALJ made a proper determination as to Claimant's credibility. In addition, Commissioner asserts that the ALJ properly determined that Claimant could perform his past relevant work. Lastly, Commissioner asserts that the ALJ properly considered the VE's testimony.

B.      The Standards.

1.      Summary Judgment.   Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.      Judicial Review.   Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3. <u>Social Security - Medically Determinable Impairment - Burden</u>. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460 (1983).

4. <u>Social Security - Medically Determinable Impairment</u>. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); <u>Throckmorton v. U.S. Dep't of Health and Human Servs.</u>, 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5. <u>Disability Prior to Expiration of Insured Status- Burden</u>. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. <u>Highland v. Apfel</u>, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); <u>Stephens v. Shalala</u>, 46 F.3d 37, 39 (8th Cir.1995)).

6. <u>Social Security - Standard of Review</u>. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

7. <u>Social Security - Scope of Review - Weight Given to Relevant Evidence</u>. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." <u>Milburn Colliery Co. v. Hicks</u>, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all

of the relevant evidence.  Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. _Social Security - Substantial Evidence - Defined_.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. _Social Security - Sequential Analysis_.  To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy.  Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

10. _Social Security - Treating Physician - Controlling Weight_ - The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record.  20 C.F.R. § 416.927(d)(2).  See also  Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v.  U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir.  1990).

11. _Social Security - Claimant's Credibility - Pain Analysis_.  The determination of whether a person is disabled by pain or other symptoms is a two step process.  First, the ALJ must

expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

C.      Discussion

1. Opinion of Treating Physicians

Claimant argues that the ALJ erred in not granting the opinions of Dr. Ahmed and Dr. Mathias controlling weight. Commissioner counters that the ALJ gave proper weight to the opinions of Claimant's treating physicians.

The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). See also Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v.  U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990).

Claimant's argument that the ALJ failed to give proper weight to the opinions of Dr. Ahmed and Dr. Mathias is without merit. The ALJ accorded Dr. Ahmed's opinion some weight, "but [did] not find it to be controlling." (Tr. 17). The ALJ determined that Dr. Ahmed's "assessments appear substantially predicated upon the claimant's subjective complaints and presentation." (Tr. 23). Further, "Dr. Ahmed's August 2003 observations are not convincingly supported by his own longitudinal objective medical findings." (Tr. 23). Likewise, the ALJ determined that Dr. Mathias' opinion that "claimant had been disabled from all full-time work

activity as of 'June 2, 2002' is not supported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ stated that "there is no definitive medical evidence or reason to explain why he was able to work up until June 7, 2002 but was 'totally and completely medically disabled' thereafter." (Tr. 23).

Also, the opinions of Dr. Mathias and Dr. Ahmed are inconsistent with other evidence of record. Contrary to Dr. Mathias' opinion that Claimant could not perform full-time work, Dr. Downer's, Claimant's chiropractor, found in September 2002 and December 2002 that there was no indication of lingering and significant claimant musculoskeletal difficulties after the alleged onset date of disability." (Tr. 21). Also, Claimant was evaluated by a physical therapist on January 7, 2003 and after six sessions claimant had a reported overall reduction in back pain. (Tr. 21). The ALJ also noted that Claimant "had complied with his home exercise program and stated that he planned to begin a regular fitness program." (Tr. 21).

Dr. Ahmed found that Claimant's gait was disturbed by "freezing" in August 2003 and that Claimant qualified for listing 11.06. However, "[t]he August 2003 notes of Dr. Ahmad W. Husari indicate that the claimant's Parkinson's symptoms were "controlled." (Tr. 22). Also, psychologist Martin Levin, M.A. who completed a mental status evaluation of Claimant in August 2003 made no recorded observations as to witnessing any of the Claimant's physical difficulties such as tremors, slowness, gait disturbance or hesitancy. (Tr. 24). In addition, Dr. Levin noted that "claimant's posture and gait were within normal limits and that he did not appear to need assistance in moving about." (Tr. 24). "The claimant was able to physically complete, with good effort, three intelligence/personality tests, including the 370-question Minnesota Multiphasic Personality Inventory -2 (MMPI-2), during the evaluation." (Tr. 24). The opinions of

Drs. Mathias and Ahmed are also inconsistent with Claimant's testimony regarding his daily activities. Claimant stated that he does chores around the house, enjoys hunting, fishing and playing a musical instrument (Omnichord), socializing with family and friends and visiting fraternal organizations. (Tr. 24). Therefore, the ALJ properly assessed the opinions of Claimant's treating physicians.

## 2. Listed Impairment

Claimant contends that the ALJ erred in finding that Claimant did not meet Listing § 11.06 Commissioner counters that the ALJ properly found that Claimant did not meet Listing § 11.06.

Section 11.06 of the listed impairments represents Parkinsonian syndrome. "That listing requires a diagnosis of that disease, along with the following signs: 'Significant rigidity, brady kinesia, or tremor in two extremities, which, singly or in combination, result in sustained disturbance of gross and dexterous movements, or gait and station.'" (Tr. 17).

In the present case, the "claimant was provisionally diagnosed with Parkinson's disease in July 1996." (Tr. 18). However, the ALJ determined that "[s]ince June 7, 2002, the claimant has evidenced no medically determinable impairments, whether considered individually or in combination, that have presented symptoms sufficient to meet or medically equal the severity criteria for any impairment listed in Appendix 1, Subpart P, Regulation No. 4." (Tr. 17). The Claimant points to the August 2003 opinion of Dr. Ahmed which stated that the "claimant had an impairment of a severity sufficient to meet listing 11.06." (Tr. 23). As previously discussed, the ALJ determined that Dr. Ahmed's opinion is not afforded controlling weight because it is not supported by medically determinable evidence is inconsistent with substantial evidence in the

19

record. (Tr. 23). In addition, as discussed above there is substantial evidence in the record that supports the ALJ's determination that the Claimant does not meet listing 11.06. Therefore, the ALJ properly determined that Claimant does not meet Listing 11.06.

### 3. Re-contacting Medical Sources

Claimant contends that the ALJ erred when he failed to re-contact Claimant's physicians to resolve inconsistencies or ambiguities in the record. Commissioner counters that the ALJ does not have an affirmative duty to re-contact Claimant's physicians.

Title 20 of the Code of Federal Regulations regarding re-contacting medical sources states that "[w]hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision." 20 CFR § 404.1512(e), 416.912(e). Therefore, the ALJ is only required to re-contact medical sources when he determines that additional information is needed to make a proper determination or decision.

In the present case, the ALJ had sufficient evidence to make a determination about Claimant's capacity to perform gainful work activities. The ALJ based his decision not only on the treating notes and opinions of Dr. Ahmed and Dr. Mathias, but also on the treatment notes of Dr. Kanj and Dr. Husari, the notes of Dr. Downer, Claimant's chiropractor, two RFC assessments made by State Agency medical consultants, testimony from Claimant and finally the mental status evaluation from Dr. Martin Levin, a licensed psychologist. (Tr. 20-25).

The ALJ had no duty to re-contact Claimant's physicians. The record contained sufficient and substantial evidence to allow the ALJ to make a proper determination.

### 4. Credibility Analysis

Claimant contends that the ALJ failed to follow requisites of SSR 96-7p when evaluating Claimant's credibility and symptoms. Commissioner counters that the ALJ made a proper determination as to Claimant's credibility.

The determination of whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

In the present case the ALJ correctly applied the Craig test. The ALJ found that the "claimant has medically determinable impairments that could reasonably be expected to cause some of the symptoms described, and the undersigned believes that the claimant does experience tremors, mild low back pain, sleep apnea and some loss of dexterity, but not to the degree, frequency or debilitating severity alleged." (Tr. 20). This satisfies the first prong of Craig. With regard to the Claimant's credibility, the ALJ found "the overall allegations of the claimant with regard to his impairments and limitations as purported to exist since June 7, 2002 to be only partially credible." (Tr.18). "The claimant has continued to engage in a number of different activities that indicate his retention of significant functional ability." (Tr.18). The claimant was diagnosed with Parkinson's disease in July 1996 but continued to work for almost six more years until he voluntarily retired on June 7, 2002. (Tr. 18). Claimant stated that he was eligible to retire for three years prior to the date that he quit and missed  very few days of work before deciding to retire. (Tr. 18). "No evidence indicates that the claimant was asked to retire or was deemed

physically unable to perform his job by his employer while he remained still employed. It appears

that he has enjoyed thus far an active retirement, traveling to Canada, to the beach, and

occasionally to basketball games and concerts. He continues to drive a significant distance every

week, an activity that would seemingly be dangerous were the claimant as limited by his

condition as alleged. The claimant shops, apparently waxes his automobile and changes its oil,

plays a musical instrument, hunts, goes fishing and mows a half-acre lot with tractor and self-

propelled mower. He is able to trim his own toenails and, with stated difficulty, to button his own

clothing." (Tr. 19). The ALJ considered claimant's subjective complaints of pain as well as his

credibility in light of the entire record and satisfied the second prong of Craig.  Therefore, the

ALJ properly assessed Claimant's credibility.

### 5. Past Work History

Claimant argues that the ALJ failed to give proper weight and credit to Claimant's past

work history. Commissioner counters that the ALJ properly evaluated the Claimant's past work

history when making the credibility determination.

Claimant argues that his work history should be used as a factor in his credibility analysis.

As discussed above, the ALJ properly evaluated Claimant's credibility.

### 6. Past Relevant Work

Claimant contends that the ALJ erred in finding that Claimant could perform his past

relevant work. Commissioner counters that substantial evidence supports the ALJ's determination

that Claimant could perform his past relevant work.

The Standard for determining whether an individual is capable of performing past relevant

work is set forth in SSR 82-62. It states that "[i]n finding that an individual has the capacity to

perform a past relevant job, the determination or decision must contain among the findings the following specific finds of fact: (1) A finding of fact as to the individual's RFC; (2) A finding of fact as to the physical and mental demands of the past job/occupation; (3) A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

The Claimant's argument that the ALJ ignored the requirements of SSR 82-62 when determining his work capabilities is without merit. First, the ALJ found "accordingly that, since June 7, 2002, the claimant has had at least the residual functional capacity to perform work that would require no more than a sedentary level of physical exertion." (Tr. 24). This satisfies the first prong of SSR 82-62, requiring the ALJ to make a finding of fact as to the Claimant's RFC. Second, the Claimant's past relevant work was as a family support specialist, assessing the eligibility of applicant's for the state welfare agency's benefit program. (Tr. 25). The job requirements for a family support specialist were given by the Claimant in his written reports and testimony as well as from a vocational analysis. (Tr. 72-73, 93, 321-322, 347-348). The ALJ determined that such an occupation entailed an "inherent degree of relative flexibility (i.e. would entail no mandatory lifting, climbing, balancing, exposure to hazards that would appear generally to afford the option to sit or stand at will, etc.) To such extent that the claimant's ongoing symptoms had likely been accommodated to a degree since 1996." (Tr. 25). This satisfies the second prong of SS 82-62 which requires the ALJ to make a finding of fact as to the physical and mental demands of the past job/occupation. Third, the ALJ was "unable to find any objective evidence to indicate that the claimant would have been unable to continue with his job as a family support specialist had he chosen to do so." (Tr. 25). This satisfies the last prong of SSR 82-62 which requires the ALJ to make a finding of fact that the Claimant's RFC would permit a return

to his past relevant work. Therefore, the ALJ properly determined that Claimant could perform his past relevant work.

### 7. Testimony of Vocational Expert

Claimant asserts that the ALJ erred in disregarding the favorable testimony of the Vocational Expert (VE). The Commissioner maintains that the ALJ properly considered the testimony of the VE.

The ALJ need only pose those hypothetical questions that are based on substantial evidence and accurately reflect the claimant's limitations. Copeland v. Bowen, 861 F.2d 536, 540-541 (9th Cir. 1988). Based on the evidence of record, the ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a claimant's counsel, even though these considerations are more restrictive than those suggested by the ALJ. France v. Apfel, 87 F.Supp.2d 484, 490 (D.Md. 2000) (citing Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1986)).

Claimant's argues that the ALJ should have taken into consideration that Claimant would not be able to perform his past relevant work if he was required to lay down a few times per day. (Tr. 346). This argument is without merit because as discussed above, the ALJ properly found Claimant to be less than credible.  Therefore, the ALJ properly rejected Claimant's allegation that he was required to lay down a few times per day.

### IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and the Commissioner's Motion for Summary Judgement be GRANTED because the ALJ was substantially justified in his decision. Specifically, the ALJ gave proper weight to the opinion of Claimant's treating physicians, Dr. Mathias and Dr. Ahmed.  Also, the ALJ properly

determined that the Claimant did not meet listing 11.06. In addition, the ALJ was not required to re-contact any treating physicians. Also, the ALJ properly determined Claimant's credibility. Lastly, the ALJ properly determined that Claimant could perform his past relevant work.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: June 29, 2005

/s/ James E. Seibert
JAMES E.  SEIBERT
UNITED STATES MAGISTRATE JUDGE
